1

2            **UNITED STATES DISTRICT COURT**

              **DISTRICT OF NEVADA**

3   ANTHONY ZAMORA,                        Case No.: 3:19-cv-00015-MMD-WGC

4         Plaintiff                        **Report & Recommendation of**
                                           **United States Magistrate Judge**
5   v.
                                           Re: ECF No. 31
6   HENSON, et. al.,

7         Defendants

8

9        This Report and Recommendation is made to the Honorable Miranda M. Du, United

10  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28

11  U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

12       Before the court is Defendant's Motion for Summary Judgment. (ECF Nos. 31, 31-1 to

13  31-4, and manually filed DVD.) The motion was served on Plaintiff at his last address of record;

14  however, despite being given an extension of time, Plaintiff has not filed a response.

15       After a thorough review, it is recommended that Defendant's motion be granted.

16                          **I. BACKGROUND**

17       When Plaintiff filed this action, he was an inmate in the custody of the Nevada

18  Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. §

19  1983. (Compl., ECF No. 6.) The events giving rise to this action took place while Plaintiff was

20  housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Plaintiff was subsequently

21  discharged from NDOC, and filed a notice of change of address. (*See* ECF Nos. 20, 22.)

22       The court screened Plaintiff's complaint, and allowed to proceed with an Eighth

23  Amendment failure to protect claim against defendant Daniel Henson. (ECF No. 4.) Plaintiff

alleges that in December of 2017, Henson escorted Plaintiff from administrative segregation to the infirmary. He was segregated from other inmates because he was a former gang member and was classified as "drop-out status." Plaintiff was secured for transfer with belly chains, which were on throughout his time in the infirmary. Henson put Plaintiff in a holding area with another inmate that Plaintiff believes was an active member of the gang from which Plaintiff was a drop-out. Plaintiff avers that NDOC policy prohibits inmates in protective custody from being in the proximity of other unmonitored and unsecured inmates. Plaintiff claims that the other inmate had one hand uncuffed, and assaulted Plaintiff before Plaintiff could notify Henson of the issue of the gang affiliation. The inmate inflicted numerous blows to Plaintiff's head, and then pushed Plaintiff to the ground and kicked him repeatedly until Henson interceded. Plaintiff suffered injuries from the attack.

Defendant Henson moves for summary judgment, arguing: (1) he is entitled to summary judgment insofar as Plaintiff sues him for damages in his official capacity; (2) he did not know of and disregard a risk to Plaintiff's safety, and when he became aware of a risk to Plaintiff's safety he acted reasonably to intervene; and (3) he is entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

1  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

2  other hand, where reasonable minds could differ on the material facts at issue, summary

3  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

4         "The purpose of summary judgment is to avoid unnecessary trials when there is no

5  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

6  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

7  of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

8  U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

9  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

10  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

11  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

12  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

13  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

14  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

15  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

16  *Anderson*, 477 U.S. at 249.

17         In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

18  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

19  come forward with evidence which would entitle it to a directed verdict if the evidence went

20  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

21  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

22  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

23  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party cannot establish an element essential to that party's case on which that party will have the

burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to

establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Failure to Protect Standard**

Under the Eighth Amendment, prison conditions should not "involve the wanton and

unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime

warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison

conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates

receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to

1 | guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting

2 | *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

3 |       "[P]rison officials have a duty...to protect prisoners from violence at the hands of other

4 | prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted); *see also Cortez v. Skol,*

5 | 776 F.3d 1046, 1050 (9th Cir.2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated

6 | 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,'

7 | having stripped them of virtually every means of self-protection and foreclosed their access to

8 | outside aid, the government and its officials are not free to let the state of nature take its course."

9 | *Farmer*, 511 U.S. at 833  (internal citations omitted). "Being violently assaulted in prison is

10 | simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*.

11 | at 834 (citing *Rhodes*, 452 U.S. at 347).

12 |       To establish a violation of this duty, the prisoner must establish that prison officials were

13 | "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834; *see*

14 | *also Labatad v. Corrections Corp. of America*, 714F.3d 1155, 1160 (9th Cir. 2013) (citing

15 | *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under the deliberate

16 | indifference standard, a violation of the Eighth Amendment is only found when an objective and

17 | subjective component are met. *See Farmer*, 511 U.S. at 834; *Labatad*, 714F.3d at 1160.

18 | First, "the deprivation alleged must be, objectively, sufficiently serious...; a prison official's act

19 | or omission must result in the denial of 'the minimal civilized measures of life's necessities.'"

20 | *Farmer*, 511 U.S. at 834  (citations and quotations omitted). When a plaintiff claims prison

21 | officials failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated

22 | under conditions posing a substantial risk of serious harm." *Id*.  (citations omitted).

23 |

1    Second, the inmate must satisfy the subjective element. This means that the prison

2 official must "know of and disregard an excessive risk to inmate health or safety; the official

3 must both be aware of facts from which the inference could be drawn that a substantial risk of

4 serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Mere

5 negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.

6 1998). "Liability may only follow if a prison official 'knows that inmates face a substantial risk

7 of serious harm and disregard that risk by failing to take reasonable measures to abate it.'"

8 *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

9    A prison official may avoid liability by: (1) proving they were unaware of the risk, or (2)

10 proving they "responded reasonably to the risk, even if the harm ultimately was not averted."

11 *Farmer*, 511 U.S. at 844-45.

12 **B. Analysis**

13    Defendant provides evidence to support the following statement of facts that are

14 undisputed by virtue of Plaintiff's failure to file a response to the motion:

15    Plaintiff arrived at NNCC on December 6, 2017. (ECF No. 31-1 at 2.) On December 12,

16 2017, Henson escorted Plaintiff to a waiting area at NNCC, where another innate, Michael

17 Quinones, was also present. No other inmates or personnel were in the waiting area. Quinones

18 was filling out paperwork. Unbeknownst to Henson, Quinones' right hand was unrestrained.

19 When they arrived in the waiting area, Henson asked Plaintiff and Quinones if either of them had

20 a problem with the other, and both indicated they did not. Plaintiff did not say anything to

21 Henson indicating Quinones was a threat to his safety, or that he did not wish to be left alone in

22 the waiting room with Quinones. (Henson Decl., ECF No. 31-2 ¶ 4(a).)

23

6

1    Henson then left the waiting area to retrieve another inmate, and after leaving the waiting

2  area, Henson saw movement in the waiting area through the window. He immediately went to

3  the door and called for back-up. He saw Quinones striking Plaintiff, and he opened the door and

4  ordered Quinones to stop, and stood over Plaintiff to protect him from Quinones. (*Id*. ¶ 4(b).)

5    Henson did not know, and did not have any reason to know, that Quinones' right hand

6  was not restrained. Normally, an inmate's hand would not be unrestrained, even while filling out

7  paperwork. (*Id*. ¶ 5.) Henson also did not know that Quinones was a member of a gang Plaintiff

8  had dropped out of. (*Id*. ¶ 6.)

9    The video shows Henson brining an inmate (presumably, Plaintiff) into a holding room

10  where there is already an inmate sitting down completing paperwork (presumably, Quinones).

11  There is no audio, but you can see Henson asking the inmates something and then leaving the

12  two inmates in the room while Henson exits the room. As soon as Henson exits the room,

13  Quinones runs over to Plaintiff and starts assaulting him. Henson returns to the room shortly

14  thereafter and stands over Plaintiff. Before Henson brought Plaintiff into the room the camera

15  shows Quinones in the room by himself filling out paperwork. From the angle the camera is

16  pointed you can see that one of his hands is unrestrained when he lifts it up. At the point Henson

17  enters the room, however, Quinones hands are down near his lap, and from the vantage point of

18  the camera, it does not appear it would have been obvious to Henson that one of Quinones' hands

19  was restrained.

20    Defendant Henson has presented undisputed evidence that he did not know of and

21  disregard a risk to Plaintiff's safety. He believed that Quinones was fully restrained when he left

22  the waiting room to retrieve another inmate. He asked whether either inmate had a problem with

23  the other, and neither indicated there was an issue. When he left the room and saw motion

through the window, Henson immediately called for backup and entered the room to protect

Plaintiff from Quinones. His conduct does not amount to deliberate indifference under the

circumstances. Therefore, summary judgment should be granted in Henson's favor, and the court

need not address Henson's remaining arguments.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING**

Defendant Henson's Motion for Summary Judgment (ECF No. 31).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

this Report and Recommendation within fourteen days of being served with a copy of the Report

and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for

consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of

appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

until entry of judgment by the district court.

Dated: April 30, 2021

_W. G. Cobb_____
William G. Cobb
United States Magistrate Judge